UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civ. No. CV-06-3202 JNE/JJG

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | CIVIL ACTION NO. |
| v. | * | |
| STEVEN J. MELDAHL dba SJM Properties, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>CONSENT DECREE</u>

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Department of Housing and Urban Development ("HUD") and the United States Environmental Protection Agency ("EPA"), has filed a complaint alleging that Steven J. Meldahl, doing business as SJM Properties ("Defendant"), violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Section 1018"), 42 U.S.C. § 4852d; and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the owners and managing agents of residential properties subject to the law make certain disclosures and provide certain records concerning Lead-Based Paint and Lead-Based Paint Hazards to tenants when a new lease is entered into or, if the lease predates the effective date of Section 1018, at the first change to the terms of an existing lease, such as a rent increase; and

1

WHEREAS, Defendant owns and manages 31 residential properties in Minnesota constructed prior to 1978 containing approximately 34 units; and

WHEREAS, the United States alleges that Defendant failed to make certain disclosures required by Section 1018 in these 31 residential properties in Minnesota; and

WHEREAS, subsequent to HUD and EPA initiating their investigation, but prior to entry of this Consent Decree, Defendant retained a certified Lead-Based Paint risk assessor to conduct Lead-Based Paint risk assessments in 8 residential properties in which he has an ownership and management interest to determine whether the properties contain Lead-Based Paint Hazards; and

WHEREAS, Defendant has already performed certain work at many of the Subject Properties and has agreed to perform Hazard Reduction Work of known and presumed Lead-Based Paint Hazards in his residential properties; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with Section 1018 prospectively, and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the United States alleges that Defendant is subject to administrative civil penalties by HUD and EPA for violations of Section 1018 of up to $11,000 per violation; and

WHEREAS, the United States and Defendant agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the Parties agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgement of liability or wrongdoing by Defendant, but is intended solely to settle all claims asserted by the United States against Defendant on the terms set forth herein.

NOW, THEREFORE, upon consent and agreement of the United States and Defendant, and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I.JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1345 and 42 U.S.C. § 4852d(b)(2) and also has personal jurisdiction over the Defendant.  Defendant consents to, and shall not challenge entry of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), because the lawsuit involves actions that took place, and 31 Subject Properties are located, in the District of Minnesota.

## II.PARTIES BOUND

3.  This Consent Decree shall apply to and be binding upon the United States and Defendant, and his heirs, successors, and assigns.

4.  Defendant shall remain liable to the United States for all the obligations set forth in this Consent Decree.  If Defendant intends to sell or transfer any property subject to this Consent Decree, all of the following must occur before the sale or transfer:

(a)  all work must be performed at the Subject Property as set forth in Section VI; (b) a clearance examination must be passed as set forth in Section VI, and the clearance examination report ("Clearance Report") sent to HUD requesting an expedited approval due to the pending sale or transfer; and (c) HUD must approve the final Clearance Report.  HUD shall provide its approval in writing.  Any purchaser of such Subject Property shall not be bound under the terms of this Consent Decree.

### III. DEFINITIONS

5.  Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Residential Lead-Based Paint Hazard Reduction Act ("Act"), shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.  Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

a.  "Clearance Examination" shall mean an activity conducted after Lead-Based Paint Hazard Reduction Work has been performed to determine that the Hazard Reduction Work is complete and that no settled dust-lead hazards exist.  The clearance process includes a visual assessment and collection and analysis of environmental samples.  The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. Part 745, Subpart D.

b.  "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

c.       A "force majeure event" shall mean any event beyond the control of Defendant, his contractors, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

d.       "Friction surface" shall mean an interior or exterior surface that is subject to abrasion or friction, including, but not limited to, certain window, floor, and stair surfaces.

e.       "Hazard Reduction Work" shall mean any activity designed to reduce or eliminate human exposure to Lead-Based Paint hazards through methods including interim controls or abatement or a combination of the two.

f.       "HUD Guidelines" shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

g.       "Impact surface" shall mean an interior or exterior surface that is subject to damage by repeated sudden force, such as certain parts of door frames.

h.       "Interest" shall mean interest pursuant to 28 U.S.C. § 1961.

i.       "Lead-Based Paint" shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

j.      "Lead-Based Paint Free" shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

k.      "Lead-Based Paint Hazards" shall mean lead-based paint hazards as that term is defined in 40 C.F.R. § 745.65.

l.      "Lead Abatement Supervisor" shall mean any person licensed by the State in which the property is located to perform lead abatement and mitigation, and supervise lead abatement workers who perform lead abatement and mitigation.

m.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a lower case letter.

n.      "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

o.      "Subject Properties" shall mean the properties listed on Appendix A, attached hereto.

## IV. COMPLIANCE WITH SECTION 1018

6. Defendant shall comply with all requirements of Section 1018 and its implementing regulations.

7.      To the extent not previously accomplished, no later than ten (10) days after entry of this Consent Decree, Defendant shall provide to each tenant in the Subject Properties a lead hazard information pamphlet approved by EPA, as well as a "lead paint disclosure form" which shall include at a minimum the following:

a.      Any known information concerning Lead-Based Paint and/or Lead-Based Paint Hazards in the Subject Properties or state if there is no such knowledge;

b.      Any available records or reports, or summaries thereof, pertaining to Lead-Based Paint and/or Lead-Based Paint Hazards in the Subject Properties;

c.      A Lead Warning Statement containing the specific language set forth in regulations promulgated pursuant to Section 1018; and

d.      Signatures and dates of both the Defendant and tenant(s).

8.      Within twenty (20) days after entry of this Consent Decree, Defendant shall provide written notice to HUD and EPA that he has complied with the requirements of Paragraph 7 of this Consent Decree.

## V. PAYMENT OF PENALTY

9.      Defendant shall pay a civil penalty to the United States as an administrative penalty for past violations of Section 1018, as follows:

a.      Within thirty (30) days after entry of this Consent Decree, Defendant shall pay a civil penalty of $5,000.00 to the United States as an administrative penalty; and

b.      Within seven months after entry of this Consent Decree, Defendant shall pay an additional civil penalty of $5,000.00 to the United States as an administrative penalty.

10.     Each payment of the civil penalty shall be rendered by certified or cashier's check to the United States Department of Justice, in accordance with current procedures, referencing USAO File Number 2003V00290 and the civil action case name and case number of the District of Minnesota.  Payment shall be made in accordance with instructions provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Minnesota.  Any funds received after 5:00 p.m. (CST) shall be credited on the next business day.

11.     Notification that payment of the civil penalty has been made, referencing the USAO File Number 2003V00290 and the civil action case name and case number of the District of Minnesota, shall be provided in accordance with the notification provisions of Section XVI.

12.     If Defendant fails to make any payment under Paragraph 9, he shall be subject to Stipulated Penalties pursuant to Paragraph 24 of this Consent Decree.  In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

13.     Defendant shall not deduct the civil penalty paid to the United States, or any Interest or Stipulated Penalties, paid under this Consent Decree from his federal, state, or local income taxes, and the United States does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VI. WORK TO BE PERFORMED

14. This Section shall govern the Lead-Based Paint window or window component replacement, Hazard Reduction Work and ongoing operations and maintenance ("O&M") work to be performed under this Consent Decree at all Subject Properties.

15. For each Subject Property, except those previously tested, Defendant shall assume the presence of Lead-Based Paint on all painted windows, painted exterior components, painted interior friction and impact surfaces, and deteriorated interior walls, ceilings, and other surfaces not considered friction and/or impact surfaces unless such window, exterior component, interior friction or impact surface, or other deteriorated

interior surface has been found to be lead-based paint free by a Minnesota certified lead-based paint inspector or risk assessor.

16.a.     No later than thirty (30) days after entry of this Consent Decree, Defendant shall provide copies to HUD and EPA of a plan for all remaining Lead-Based Paint Hazard Reduction Work to be performed ("Hazard Reduction Plan") for all Subject Properties.  The Hazard Reduction Plan shall be prepared by a certified Lead Abatement Supervisor and shall include:   (1) a list of property addresses to be treated; (2) information about the components to be treated; (3) the method of Hazard Reduction Work chosen; and (4) and the names and certification numbers of certified abatement contractors used.  The Hazard Reduction Plan shall be prepared to ensure that Lead-Based Paint Hazard Reduction Work required by Section VI of this Consent Decree is conducted in accordance with Chapters 11, 12 and/or 13 of the HUD Guidelines.

b.   After review of the Hazard Reduction Plan, HUD shall, in writing:   (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments.  If HUD disapproves of or requires revisions to the Hazard Reduction Plan, in whole or in part, Defendant shall amend and submit to HUD a revised Hazard Reduction Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments.  If the Hazard Reduction Plan, as revised by Defendant, is still not acceptable to HUD, HUD shall revise the Hazard Reduction Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute

resolution. The Hazard Reduction Plan must be approved by HUD before any work is performed at the Subject Properties pursuant to this Consent Decree.

c. No later than sixty (60) days after approval of the Hazard Reduction Plan, Defendant shall submit a plan to HUD and EPA for ongoing operations and maintenance ("O&M Plan") for those properties that are not Lead-Based Paint Free. The O&M Plan shall include provisions to perform visual assessments of units, common areas, and exteriors on a regular basis in accordance with Chapter 6 of the HUD Guidelines, and upon tenant turnover. After review of the O&M Plan, HUD shall, in writing: (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendant shall amend and resubmit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments. If the O&M Plan, as revised by Defendant, is still not acceptable to HUD, HUD shall revise the O&M Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute resolution. The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

17. For each Subject Property, the following work shall be performed:

a. For painted windows not already replaced, replacement of all painted windows, in accordance with the Hazard Reduction Plan and Chapter 12 of the HUD Guidelines, or replacement of all painted friction and impact surfaces on window components, including but not limited to jambs, stop beads, parting strips, and sashes, in

accordance with the Hazard Reduction Plan and Chapter 12 of the HUD Guidelines, and abatement of remaining painted window components, in accordance with the Hazard Reduction Plan and Chapters 12 and/or 13 of the HUD Guidelines.  Replacement of all windows and/or window components shall be completed within one (1) year of approval of the Hazard Reduction Plan.

b.   Hazard abatement of all painted exterior components not already enclosed, including but not limited to fascia, soffits, trim, siding, and porches.

c.   Hazard abatement of all painted interior friction and impact surfaces not already abated.

d.   Paint stabilization of all deteriorated interior walls, ceilings, and other surfaces not considered friction and/or impact surfaces not already treated.

e.   The Lead-Based Paint Hazard Reduction Work of the units, common areas, and exteriors of each Subject Property listed above in Paragraphs 17.b. through 17.d. shall be completed within two (2) years after approval of the Hazard Reduction Plan. Hazard Reduction Work of the Subject Properties shall be in accordance with the Hazard Reduction Plan and with Chapters 11, 12 and/or 13 of the HUD Guidelines.

f.   No later than sixty (60) days after the approval of the Hazard Reduction Plan, any bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with Chapter 11 of the HUD Guidelines.

g.   Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

h.   Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

i.   Clearance Examinations shall be conducted by a certified Lead-Based Paint risk assessor in each Subject Property upon completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines, TSCA Section 403, 15 U.S.C. § 2683, and 40 C.F.R. § 745.227(e)(8) and (9).   Within fifteen (15) days of the receipt of the clearance examination report ("Clearance Report"), Defendant shall submit the Clearance Report to HUD and EPA.   The Clearance Report shall contain all results of dust samples analyzed at an EPA-accredited laboratory.   If the results indicate that the clearance standard is not achieved, Defendant shall repeat the cleaning procedures identified above under Paragraph 17.h., repeat dust clearance sampling within five (5) days after receipt of the failed Clearance Report, and repeat this procedure until the clearance standard has been attained.   All additional Clearance Reports shall be submitted to HUD and EPA as described above.

j.   In each of the two years, Defendant shall make substantial and reasonable progress on the Lead-Based Paint Hazard Reduction Work agreed to in this Consent Decree and shall detail the progress made in the Annual Report required in Paragraph 23 of this Consent Decree.   The Parties agree that substantial and reasonable progress shall mean completion of at least one-half (1/2) of the total inventory of Subject Properties in each year.

18. All the requirements of this Section, except the timelines, shall apply where Defendant or any governmental entity is or becomes aware of a unit where a child with an elevated blood-lead level resides or is a regular visitor.   Defendant shall perform a

Lead-Based Paint risk assessment and complete all required window replacement and Hazard Reduction Work within five (5) months after Defendant is or becomes aware of a unit where a child with an elevated blood-lead level resides or is a regular visitor. Defendant shall also comply with any work required by any other government entity, such as the City, County, or State within the timelines imposed by that entity.

19. Ongoing operations and maintenance ("O&M") in all Subject Properties that are not certified Lead-Based Paint Free shall be implemented at the completion of any window or window component replacement and/or Hazard Reduction Work within thirty (30) days of the Clearance Examination, and shall be in accordance with the O&M Plan and Chapters 6 and 17 of the HUD Guidelines. During reevaluations, Defendant shall ensure that all components and/or surfaces treated are still intact and the Hazard Reduction Work performed has not failed. If any Hazard Reduction Work has failed, Defendant shall repair the area in accordance with Chapters 11, 12 and/or 13 of the HUD Guidelines and perform a Clearance Examination within thirty (30) days of discovery. If dust hazards are discovered as part of ongoing reevaluations, Defendant shall address them according to Chapter 11 of the HUD Guidelines.

**VII. QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK**

20. All Lead-Based Paint risk assessments, window or window component replacement, Hazard Reduction Work, and other Lead-Based Paint work shall be consistent with the HUD Guidelines and conducted by individuals authorized to perform the work in accordance with the laws of the jurisdiction where the property is located. Persons performing interim controls, visual assessments for O&M, and general maintenance shall be trained in either HUD's one-day "Lead Safe Work Practices" class,

the HUD/EPA "Remodeling, Repair, and Painting" class, or equivalent as approved by the State of Minnesota.

21.     Defendant shall ensure that Clearance Examinations are not conducted by the same individual and/or same or affiliated business entity conducting the window or window component replacement or Lead-Based Paint Hazard Reduction Work that is being evaluated by the Clearance Examination.

22.     Defendant shall ensure that the Lead-Based Paint window or window component replacement or Lead-Based Paint Hazard Reduction Work on the Subject Properties is not done by the same individual and/or same or affiliated business entity that performed the risk assessments.

## VIII. REPORTING REQUIREMENTS

23.a.     On or before the one (1) year anniversary of the entry of this Consent Decree, and annually thereafter until completion of all window replacement and Lead-Based Paint Hazard Reduction Work, Defendant shall submit a written Annual Report to HUD.   The Annual Report shall include, at a minimum:   (1) a list of the property addresses where properties have been treated; (2) the status of window or window component replacement and Hazard Reduction Work, including the type of abatement or interim controls chosen and components treated, and a list of the property addresses where window or window component replacement and/or Hazard Reduction Work has been completed during that reporting period; (3) the status of ongoing O&M activities in accordance with Paragraph 19; (4) any and all information concerning the cost of the risk assessments, window or window component replacement, and Hazard Reduction Work performed; (5) any Clearance Reports that have not been previously provided to HUD

under Paragraph 17.i.; (6) any State or City notices relating to Lead-Based Paint violations at the Subject Properties; (7) a list of properties to be treated in the next reporting period; and (8) a list of units where children 6 years old or under or a pregnant woman moves in during the reporting period, including the date of move in.

b.      Defendant shall comply and shall ensure contractor compliance with any State, County, and/or City requirements for reporting Lead-Based Paint risk assessments, window or window component replacement, and Hazard Reduction Work in accordance with the laws of the jurisdiction where the property is located.

## IX. STIPULATED PENALTIES

24.     If Defendant fails to make timely payment of the penalty provided for in Section V, Defendant shall be required to pay as Stipulated Penalties $400 per day. Stipulated Penalties shall accrue until such time as the original penalty and all accrued Interest and Stipulated Penalties are paid.

25.     If Defendant fails to complete window or window component replacement and/or Hazard Reduction Work as described in Paragraphs 17 and 18, or to conduct O&M as described in Paragraph 19, Defendant shall pay Stipulated Penalties of $400 per day per violation per each unit, until the window or window component replacement, Hazard Reduction Work, and/or O&M is completed.  If any Hazard Reduction Work method fails because of Defendant's failure to follow the HUD Guidelines and/or conduct O&M as described in Paragraph 19, those properties shall not be considered abated in accordance with this Consent Decree and Stipulated Penalties shall accrue.

26.     If Defendant fails to submit any information or reports to HUD, as described in Paragraphs 15, 16, 17, and 23 in accordance with the requirements and/or

deadlines set forth in this Consent Decree, Defendant shall pay Stipulated Penalties of $200 per day for each day each such submission is deemed inadequate and/or late.

27.     Payment of Stipulated Penalties shall be made to the United States in the manner set forth in Paragraph 10 of this Consent Decree.

28.     Stipulated Penalties shall accrue regardless of whether the United States has notified Defendant of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the first day after payment is due or a required activity has not been performed and shall continue to accrue through the date of payment, or until the required activity is performed.  However, the United States may, in its unreviewable discretion, waive or reduce the amount of any Stipulated Penalty.  Nothing herein shall prevent the United States from seeking other relief that may be available for non-compliance, nor prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

## X. FORCE MAJEURE

29.     Defendant shall provide notice orally or by electronic or facsimile transmission to the Civil Division Chief of the United States Attorney's Office as detailed in Section XVI of this Consent Decree (Notice) as soon as possible, but not later than 72 hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event.  Defendant shall also provide formal, written notice, as provided in Section XVI of this Consent Decree (Notice), within seven (7) days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event.  The notice shall state the anticipated duration of any delay; its causes(s); Defendant's past and proposed actions to prevent or minimize any delay; a

schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event.  Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

30.     If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations.  An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.  Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVIII of this Consent Decree (Integration).

31.  If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section XI of this Consent Decree.  In any dispute involving force majeure, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is in fact a force majeure event; that Defendant gave the notice required by Paragraph 29 of this Section; that the force majeure event caused any delay Defendant claims was attributable to that event, and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## XI. DISPUTE RESOLUTION

32.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth

in this Section shall not apply to actions by the United States to enforce the obligations of Defendant under this Consent Decree that Defendant has not timely disputed in accordance with this Section.

33. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

34. If the parties are not in agreement at the end of this informal negotiations period, the position of the United States shall be controlling unless Defendant files a petition with the Court for resolution of the dispute within twenty-one (21) days of receipt of the United States' final position. The petition shall set out the nature of the dispute with a proposal for its resolution. The United States shall have twenty-one (21) days to file a response with an alternate proposal for resolution. In any such dispute, Defendant shall have the burden of proving that the United States' proposal is arbitrary and capricious.

35. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect any obligation of Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated Penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28. Notwithstanding the stay of payment, Stipulated Penalties shall accrue from the first day

of non-compliance with any applicable provision of this Consent Decree.  In the event

that the Defendant does not prevail on the disputed issue, Stipulated Penalties shall be

assessed and paid as provided in Paragraph 28.

## XII. RIGHT OF ENTRY

36. HUD, EPA and their representatives, contractors, consultants, and attorneys

shall have the right of entry into and upon all Subject Properties owned or controlled by

Defendant, at all reasonable times, upon proper presentation of credentials, for the

purposes of:

a.       monitoring the progress of activities required by this Consent Decree;

b.       verifying any data or information required to be submitted pursuant to this

Consent Decree;

c.       obtaining samples and, upon request, splits of any samples taken by

Defendant or his consultants (upon request, Defendant will be provided with splits of all

samples taken by the United States); and

d.       otherwise assessing Defendant's compliance with this Consent Decree.

37.      This Section in no way limits or affects any right of entry and inspection

held by the United States, HUD, EPA, the State in which the property is located, or any

County or City in which the property is located pursuant to applicable federal, state or

local laws, regulations, or permits.

## XIII. COVENANT NOT TO SUE

38. In consideration of the payments required by this Consent Decree and the

work to be performed, and except as otherwise provided in this Consent Decree, the

United States covenants not to sue or take administrative or other action against

Defendant arising out of violations of Section 1018 at the Subject Properties that occurred on or before the date of lodging of this Consent Decree.  This covenant not to sue with respect to Defendant is conditioned upon the complete and satisfactory performance by Defendant of his obligations under this Consent Decree.  This covenant not to sue extends only to Defendant and does not extend to any other person or business entity.

### XIV.PLAINTIFFS' RESERVATIONS OF RIGHTS

39. The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 38.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following:

a.      claims based on a failure by Defendant to meet a requirement of this Consent Decree;

b.      claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

c.      criminal liability; and

d.      all claims not barred by Paragraph 38 of this Consent Decree.

### XV.MISCELLANEOUS

40. This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

41.      Except as otherwise provided in this Consent Decree, each Party shall bear its own costs and attorneys' fees in this action.

## XVI. NOTICES AND SUBMISSIONS

42. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and Defendant.

43.    All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the name of United States v. Steven J. Meldahl and the case number.

*U. S. Attorney's Office*:

> Chief, Civil Division
> United States Attorney's Office
> U. S. Department of Justice
> 600 United States Courthouse
> 300 South Fourth Street
> Minneapolis, MN 55415
> (612) 664-5600 (phone)
> (612) 664-5788 (fax)

*U. S. Department of Justice*:

> Chief, Environmental Enforcement Section
> U. S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, DC 20044

*U. S. Department of Housing and Urban Development*:

> Director, Compliance Assistance and Enforcement Division
> Office of Healthy Homes and Lead Hazard Control
> U. S. Department of Housing and Urban Development
> 451 7th Street, SW

Room 8236
Washington, DC 20410

and

John B. Shumway, Esq.
Deputy Assistant General Counsel
Office of General Counsel
U. S. Department of Housing and Urban Development
451 7th Street, SW
Room 9253
Washington, DC 20410

*U. S. Environmental Protection Agency*:

Chief, Pesticides and Toxics Enforcement Section
U. S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

*Defendant*:

Steven J. Meldahl
1223 26th Avenue, N
Minneapolis, MN 55411

44.     Any Party may change either the notice recipient or the address for providing notices to it by serving all other Parties with a notice setting forth such new notice recipient or address.

45.     Any notice, report, certification, data presentation, or other document submitted by Defendant pursuant to this Consent Decree which discusses, describes, demonstrates, supports any findings, or makes any representation concerning Defendant's compliance or non-compliance with any requirement of this Consent Decree shall be certified by Defendant or a duly authorized representative of Defendant.  A person is a "duly authorized representative" only if:  (a) the authorization is made in writing; (b) the

22

authorization specifies either an individual or position having responsibility for overall operation of the regulated facility or activity (a duly authorized representative may thus be either a named individual or any individual occupying a named position); and (c) the written authorization is submitted to the United States consistent with this Paragraph.

46.   The certification required by Paragraph 45, above, shall be in the following form:

> I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete.  With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

Signature: _____
Name: _____
Title: _____

## XVII. RETENTION OF JURISDICTION

47. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII. INTEGRATION

48. This Consent Decree and its Appendix constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the Parties and the Court.  The

Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XIX. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49. Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree are subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and consideration of any comments prior to entry of the Consent Decree by the Court.  The United States reserves its right to withdraw consent to this Consent Decree based on comments received during the public notice period.  Defendant consents to entry of this Consent Decree without further notice to the Court.

50. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX. EFFECTIVE DATE

51. The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XXI. RECORD RETENTION AND PRESERVATION

52. Defendant shall preserve, during the pendency of this Consent Decree and for a minimum of at least twelve (12) months after its termination, all documents and records in his custody, control or possession and in the custody, control or possession of his employees, agents, assigns, contractors, subcontractors or consultants, which in any

manner relate to this Consent Decree or to the performance of work under this Consent Decree.  At the end of this twelve (12) month period and at least thirty (30) calendar days before any document or record is destroyed, Defendant shall notify and make available to the United States such documents and records, or shall provide the originals or accurate, true and complete copies of such documents and records to the United States.  Defendant shall not destroy any document or record to which the United States has requested access for inspection or copying until the United States has obtained such access or copies or withdrawn its request for such access or copies.

## XXII. SIGNATORIES/SERVICE

53. Each undersigned representative of the United States and Defendant certifies that he or she has reviewed this Consent Decree, had the opportunity to have this Consent Decree reviewed by counsel, and is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

54.    Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree based on public comments received pursuant to Paragraph 49 above.

55.    Defendant agrees that the person identified on his behalf under Section XVI is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree.  Defendant hereby agrees to accept service by certified mail in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

56.     Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

## XXIII. <u>TERMINATION</u>

57.     This Consent Decree shall terminate after all of the following have occurred:

a.     Defendant has completed all work required by this Consent Decree;

b.     Defendant has paid all penalties and interest due under this Consent Decree and no penalties are outstanding or owed to the United States;

c.     Defendant has certified compliance with the terms and conditions of this Consent Decree to the United States; and

d.     The United States has not disputed Defendant's certification.  If the United States disputes Defendant's certification, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.  If the United States does not contest the certification, the United States shall petition or the Parties shall jointly petition the Court to terminate the Consent Decree.

So entered in accordance with the foregoing this 7th day of August, 2006.

s/  Joan N. Ericksen
_____
UNITED STATES DISTRICT COURT JUDGE

United States v. Steven J. Meldahl

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/W. BENJAMIN FISHEROW                          Date July 16, 2006
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U. S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

RACHEL K. PAULOSE
United States Attorney

s/GREGORY G. BROOKER                          Date August 2, 2006
GREGORY G. BROOKER
Attorney Registration No. 166066
Assistant U. S. Attorney
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5689

United States v. Steven J. Meldahl

FOR THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:

s/JOHN P. OPITZ                                    Date June 16, 2006
JOHN P. OPITZ
Acting Associate General Counsel for the
Office of Finance and Regulatory Compliance

s/JOHN B. SHUMWAY                                  Date June 16, 2006
JOHN B. SHUMWAY
Deputy Assistant General Counsel for Program Compliance
Office of General Counsel
U. S. Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC 20410

<u>United States v. Steven J. Meldahl</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

s/ERIC J. COHEN For                                  Date June 12, 2006
BERTRAM C. FREY
Acting Regional Counsel
U. S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

s/MARY T. McAULIFFE                                  Date June 12, 2006
MARY T. McAULIFFE
Associate Regional Counsel
U. S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

<u>United States v. Steven J. Meldahl</u>

FOR DEFENDANT, STEVEN J. MELDAHL


s/STEVEN J. MELDAHL                                    Date June 9, 2006
STEVEN J. MELDAHL
1223 26th Avenue, N
Minneapolis, Minnesota 55411

**APPENDIX A**
**(Subject Properties with Street Addresses, Number of**
**Units, Units with Children, and Construction Date)**

| Address | | No. units | Children Under Age 6 (yes/no) | Construction Date |
|---|---|---|---|---|
| 1. | 2417 24th Avenue N. | 1 | No | (1932) |
| 2. | 3709 2nd Avenue, S. | 1 | No | (1938) |
| 3. | 2610 Irving Avenue, N. | 1 | No | (1936) |
| 4. | 421 Morgan Avenue, N. | 1 | Yes | (1912) |
| 5. | 819 Newton Avenue, N. | 1 | No | (1926) |
| 6. | 2807 Knox Avenue, N. | 1 | No | (1928) |
| 7. | 2931 Oliver Avenue, N. | 1 | Yes | (1931) |
| 8. | 317 23rd Avenue, N. | 1 | No | (1908) |
| 9. | 2442 15th Avenue, S. | 2 | No | (1912) |
| 10. | 1646 Washburn Avenue, N. | 1 | Yes | (1932) |
| 11. | 2306 James Avenue, N. | 1 | No | (1922) |
| 12. | 810 Newton Avenue, N. | 1 | No | (1926) |
| 13. | 528 Morgan Avenue, N. | 1 | Yes | (1931) |
| 14. | 1523 Morgan Avenue, N. | 1 | No | (1934) |
| 15. | 425 24th Avenue, N. | 2 | No | (1922) |
| 16. | 4220 Irving Avenue, N. | 1 | No | (1936) |
| 17. | 321 31st Avenue, N. | 1 | No | (1912) |
| 18. | 2219 29th Avenue, N. | 2 | No | (1924) |
| 19. | 2319 Aldrich Avenue, N. | 1 | No | (1928) |
| 20. | 2634 13th Avenue, S. | 1 | Yes | (1906) |
| 21. | 1714 Queen Avenue, N. | 1 | No | (1930) |
| 22. | 2942 Dupont Avenue, N. | 1 | No | (1912) |
| 23. | 2539 12th Avenue, S. | 1 | No | (1926) |
| 24. | 3115 Thomas Avenue, N. | 1 | No | (1928) |
| 25. | 2315 Aldrich Avenue, N. | 1 | No | (1926) |
| 26. | 3311 Oakland Avenue, S. | 1 | Yes | (1908) |
| 27. | 2815 14th Avenue, S. | 1 | No | (1902) |
| 28. | 2627 Dupont Avenue, N. | 1 | No | (1932) |
| 29. | 2018 11th Avenue, S. | 1 | No | (1906) |
| 30. | 3455 James Avenue, N. | 1 | No | (1942) |
| 31. | 1518 Thomas Avenue, N. | 1 | No | (1932) |